**Corrected**

# In the United States Court of Federal Claims

No. 26-1006C
Filed: November 10, 2026*
NOT FOR PUBLICATION

| |
|---|
| **AMERICAN CORRECTIONAL HEALTHCARE, INC.,** |
| ***Plaintiff,*** |
| **v.** |
| **UNITED STATES,** |
| ***Defendant.*** |

*Henry Todd Whay* and *Ian Andrew Cronogue*, Baker, Cronogue, Tolle & Werfel, LLP, McLean, VA, for the plaintiff.

*Oliver McDonald*, Civil Division, U.S. Department of Justice, Washington, DC, for the defendant.

**MEMORANDUM OPINION**

***HERTLING*, Judge**

In this pre-award bid protest, American Correctional Healthcare, Inc. ("ACH") challenges solicitation No. 15BFA025R00000055 (the "solicitation"), issued by the defendant, acting through the Federal Bureau of Prisons ("BOP"), for comprehensive inmate medical services at Federal Correctional Institution ("FCI") Cumberland, in Maryland. The solicitation requires that all offerors use Core-Based Statistical Area ("CBSA") 51 – West Virginia ("CBSA 51"), as opposed to CBSA 21 – Maryland ("CBSA 21"), as a pricing benchmark and express their bids in terms of a "percentage discount from or premium to the Medicare benchmark rate."[1]

---

* Pursuant to the protective order in this case, this opinion was filed under seal on November 2, 2026, and the parties were directed to propose redactions of confidential or proprietary information by November 9, 2026. Neither party proposed redactions, so the opinion is hereby released in full.

[1] CBSAs are statistical geographic areas, created by the Office of Management and Budget, used by federal agencies to allocate federal funds. *See* GAO-04-758, Metropolitan Statistical Areas: New Standards and Their Impact on Selected Federal Programs (June 2004) at 1; *see also* Taylor R. Knoedl, *Core Based Statistical Areas* (CRS Report No. IF12704, July 3, 2024), https://www.congress.gov/crs-product/IF12704.

Medicare sets reimbursement rates for each hospital based on a wage index derived from that hospital's CBSA. *See* 42 C.F.R. § 413.312; *see also* Medicare Program; Hospital Inpatient Prospective Payment Systems for Acute Care Hospitals (IPPS) and the Long-Term Care Hospital Prospective Payment System and Policy Changes and Fiscal Year (FY) 2027 Rates; Requirements for Quality Programs; Other Policy Changes; and Adoption of Updated Versions of Certain Health Information Technology Standards, 91 Fed. Reg. 49570, 49789-49790 (Aug. 4, 2026).

ACH alleges that the BOP acted arbitrarily and capriciously in developing the solicitation by requiring offerors to use CBSA 51 as the pricing benchmark for their offers. This benchmark was to be incorporated into the eventual contract. ACH alleges that the BOP did not conduct adequate market research in choosing CBSA 51 as the benchmark for a contract that would take place mostly in Maryland, did not comply with customary commercial practices, and was not issued a waiver for a nonstandard locality. The plaintiff alleges that it is prejudiced by these errors because the solicitation is unreasonably restrictive, overly risky, and does not allow for adequate competition. The parties have cross-moved for judgment on the administrative record.

ACH's challenge does not establish that the BOP's choice to not use CBSA 21 in the solicitation was arbitrary, capricious, an abuse of discretion, or otherwise contrary to the law, and it does not establish that the BOP's choice to use CBSA 51 as the benchmark was prejudicial. Accordingly, the plaintiff's motion for judgment on the administrative record is denied, and the defendant's cross-motion for judgment on the administrative record is granted.

## I. FACTUAL BACKGROUND

On October 15, 2025, the BOP issued on SAM.gov a sources sought questionnaire ("SSQ") pertaining to the procurement of "necessary professional and facility services for both inpatient admissions and outpatient encounters" for FCI Cumberland. (AR 175.) The SSQ noted that the BOP intended to issue "[a] single solicitation. . . for comprehensive hospital and physician services" at FCI Cumberland and outlined the types and amounts of medical services it anticipated needing under the contract. (AR 36-37.) The SSQ indicated that offerors should calculate their prices and express them as a percentage difference from the CBSA 21 Medicare rates and that "[t]he rates established in the resulting contract shall not be construed as participation in the Medicare program. . . ." (AR 37-38.) The SSQ noted that "[t]his [ ] pricing methodology [was] not intended to be restrictive of any offeror"; offerors could propose any price so long as it was expressed as a "percentage discount from or premium to the Medicare benchmark rate." (AR 37.)

ACH, the incumbent contractor, responded to the SSQ and informed the BOP that using CBSA 21 as the pricing benchmark is flawed because "[m]any of the services [that] are utilized by FCI Cumberland are performed in West Virginia," and Maryland and West Virginia Medicare rates are established using different methodologies. (AR 48.) ACH proposed instead that the solicitation use pricing that reflects both the Maryland and West Virginia Medicare rates. (*Id.*)

The BOP then performed additional market research, including: (1) contacting "knowledgeable individuals in [g]overnment and industry regarding market capabilities to meet requirements"; (2) reviewing recent market research undertaken for contracts with similar or

identical requirements; (3) searching government-wide databases for similar contracts and other procurement instruments; and (4) obtaining source lists of similar items from other contracting activities. (AR 66.)

Based on its market research, the BOP decided to use CBSA 51 rates, instead of CBSA 21 rates or multiple Medicare rates, as the benchmark for pricing offers for inmate medical services at FCI Cumberland. (*Id.*) The BOP explained that:

> This CBSA code was determined by referring to the previous contract, searching the current contract's hospital network on the American Hospital Directory (AHD), and referring to Medicare's FY 2026 Hospital Inpatient Prospective Payment System (PPS) Final Rule Table 3. It has been determined that because the Maryland CBSA follows a different Medicare reimbursement methodology under the Health Services Cost Review Commission (HSCRC), CBSA 51 - West Virginia will be used to maintain consistency with the CMCS pricing methodology.

(*Id.*)

On March 7, 2026, the BOP issued the solicitation, which requires offerors to express their pricing as "a discount from or a premium to" the CBSA 51 Medicare rates. (AR 167.) The BOP intends to use this benchmark as a common basis for comparing bid prices, because, as the solicitation explains, "[o]fferors who vary their pricing methodology create a situation whereby the [g]overnment cannot conduct a comparative evaluation of offers in pricing aspects." (AR 165.) The solicitation notes specifically that "[t]his structuring of the pricing methodology is not intended to be restrictive of any offeror; offerors need only to propose that percentage discount from or premium to the Medicare benchmark rate which will reflect the desired level of payment for the category of services rendered." (AR 167.)

## II. PROCEDURAL HISTORY

On April 5, 2026, ACH challenged the solicitation at the United States Government Accountability Office ("GAO"). (AR 1954-1961.) The GAO denied ACH's protest on July 6, 2026. The GAO concluded that using CBSA 51 as a pricing benchmark for comparison purposes was not unreasonable, and even if it was, ACH could not establish that it had been competitively prejudiced as a result. (AR 1960-61); *See Matter of: Am. Corr. Healthcare, Inc.*, B-424391 at 4-5 (July 6, 2026).

On July 15, 2026, ACH brought this pre-award protest. On September 8, 2026, the plaintiff filed a motion for judgment on the administrative record. (ECF 17.) On September 29, 2026, the defendant responded and cross-moved for judgment on the administrative record. (ECF 18.) On October 8, 2026, the plaintiff filed its reply. (ECF 20.) Oral argument was held on October 28, 2026. At the close of the argument, an oral ruling was rendered and judgment was entered. This opinion explains in greater detail the rationale for the oral ruling.

## III. JURISDICTION AND STANDING

Under the Tucker Act, 28 U.S.C. § 1491(b)(1), the Court of Federal Claims has jurisdiction to review "an action by an interested party objecting to a solicitation by a [f]ederal agency for bids or proposals for a proposed contract. . . or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement [ ] without regard to

whether suit is instituted before or after the contract is awarded." ACH challenges the provision of the solicitation using CBSA 51 as the pricing benchmark, alleging its use is arbitrary and capricious and contrary to law. This claim falls within the court's bid-protest jurisdiction.

To establish statutory standing under § 1491(b)(1), a plaintiff must allege facts that, if true, "establish that it (1) is an actual or prospective bidder, and (2) possesses the requisite direct economic interest." *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1307 (Fed. Cir. 2006). An offeror in a pre-award protest may establish a direct economic interest by demonstrating the solicitation or bidding process caused it to suffer a "non-trivial competitive injury." *Weeks Marine, Inc. v. United States*, 575 F.3d 1352, 1361-62 (Fed. Cir. 2009). This standard applies when a "prospective bidder" challenges the terms of a solicitation before submitting a bid. *Orion Tech. v. United States*, 704 F.3d 1344, 1348 (Fed. Cir. 2013).

"For standing, [the court] presume[s] the party bringing a bid protest will succeed on the merits of its claim and ask[s] whether it has alleged an injury (or prejudice) caused by the procuring agency's actions." *Am. Relocation Connections, L.L.C. v. United States,* 789 F. App'x 221, 226 (Fed. Cir. 2019).

ACH is the incumbent and intends to submit a proposal under the solicitation. ACH alleges harm stemming from the BOP's improper use of Medicare rates for rural West Virginia as the benchmark for comparison among bids. Assuming its allegations to be true, the BOP has employed a nonstandard requirement in its solicitation without following the correct process. As a result, ACH alleges it will be disfavored in competing against larger businesses. If assumed to be true, the allegations are sufficient to sustain ACH's standing to bring this protest.

## IV. STANDARD OF REVIEW

The Administrative Procedure Act ("APA") "supplies the standard of review in bid protests." *Oak Grove Techs., LLC v. United States*, 116 F.4th 1364, 1374 (Fed. Cir. 2024) (*See* 28 U.S.C. § 1491(b)(4); *see also Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009)). Under that standard, an agency's procurement action may only be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). A court must "determine whether '(1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure.'" *Weeks Marine,* 575 F.3d at 1358 (quoting *PGBA, LLC v. United States*, 389 F.3d 1219, 1225 n.4 (Fed. Cir. 2004)).

Review of agency procurement decisions is deferential, and courts should "sustain an agency action 'evincing rational reasoning and consideration of relevant factors.'" *Weeks Marine,* 575 F.3d at 1368-69 (quoting *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000)). While a court "may not supply a reasoned basis for the agency's action that the agency itself has not given," an agency's decision "of less than ideal clarity" will be upheld "if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.,* 419 U.S. 281, 285–86 (1974). A court must take care not to substitute its judgment for that of the agency, even if reasonable minds could reach different conclusions. *Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974).

Finding that an agency has acted irrationally or contrary to law does not end the inquiry. If a plaintiff prevails on the merits of its claim, the court must proceed to "determine, as a factual

matter, if the bid protester was prejudiced by that conduct." *Bannum v. United States*, 404 F.3d 1346, 1351 (Fed. Cir. 2005). "[T]he second step is always required before setting aside a bid award, regardless of whether the error identified at the first step was arbitrary and capricious action or, instead, a violation of law." *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 997 (Fed. Cir. 2021). To prove prejudice in a pre-award protest, the "prospective bidder or offeror must establish 'a non-trivial competitive injury which can be redressed by judicial relief.'" *Weeks Marine,* 575 F.3d at 1363 (quoting 28 U.S.C. § 1491(b)(1)).

## V. DISCUSSION

While the standard of review for agency procurement decisions is deferential, courts must still overturn agency action if it is arbitrary, capricious, or contrary to law. *Weeks Marine.,* 575 F.3d at 1368-69; 5 U.S.C. § 706(2)(A).

The parties do not dispute that the BOP seeks to procure commercial services through the solicitation, and that FAR Part 12 therefore applies. (See AR 159-166.); FAR 12.102(a). The parties also agree that the challenged pricing benchmark will be included as a contract term.

Contracts for commercial services "shall, to the maximum extent practicable, include only those clauses . . . [d]etermined to be consistent with customary commercial practice." FAR 12.301(a)(2). To determine whether contract terms are consistent with customary commercial practice, an agency must conduct market research. *AirBoss Def. Grp., LLC v. United States*, 172 Fed. Cl. 219, 228 (2024); *CW Gov't Travel, Inc. v. United States*, 99 Fed. Cl. 666, 676 (2011) (citing *Smelkinson Sysco Food Servs.,* B–281631, 1999 WL 140173, at *4 (Comp. Gen. Mar. 15, 1999)). If an agency decides to include terms contrary to customary commercial practice in any contract for commercial services, it must first obtain a waiver. FAR 12.302(c).

ACH challenges the solicitation's requirement that offerors price their offers as "a variance from the benchmark Medicare rate" for CBSA 51, arguing it is both arbitrary and capricious and contrary to statute. ACH argues that it is arbitrary and capricious because the use of pricing that bears no relationship to the locale where the services are rendered is contrary to customary commercial practice; it is contrary to law because the BOP did not obtain a waiver before including it in the solicitation and planning to include it in the contract.

In effect, ACH challenges two different decisions by the BOP as arbitrary and capricious: the decision not to use CBSA 21 as the pricing benchmark and the decision to use CBSA 51 as the pricing benchmark.

To justify its rejection of CBSA 21 as the pricing benchmark, the BOP cited the fact that the "Maryland CBSA follows a different Medicare reimbursement methodology under the [Maryland] Health Services Cost Review Commission (HSCRC)."[2] The BOP concluded that it

---

[2] The HSCRC was created by the Maryland legislature in 1971 to regulate hospital rates. *HSCRC Overview*, MARYLAND.GOV, https://hscrc.maryland.gov/Pages/About-Us.aspx (last visited Oct. 22, 2026); *see* MD. CODE REGS. 10.37 (1973). "The HSCRC . . . was authorized to establish hospital rates to promote cost containment, access to care, equity, financial stability and hospital accountability. Since that time, all payers pay Maryland hospitals on the basis of the rates established by the HSCRC." *Id.*

would be difficult to compare bids for FCI Cumberland to bids for similar services it obtains at its facilities in other states without requiring a standardized benchmark because Maryland's HSCRC waiver is different from the rest of the Medicare reimbursement system. It is rational for the BOP to seek to avoid difficulties comparing contract costs for healthcare it provides at facilities throughout the country due to Maryland's unique healthcare-finance regime. The BOP's decision not to use Maryland pricing, either alone or in combination with another state's pricing (as ACH proposed), may not be the best solution, but it is not the judicial role to determine the best regime. Instead, the agency's decision only needs to be reasonable and explained, and here the decision is both. Thus, ACH has not shown that the decision to reject CBSA 21 as the pricing benchmark is arbitrary or capricious.

The BOP's decision to reject CBSA 21 as the pricing benchmark was also not contrary to law. In its SSQ, the BOP sought information from ACH and other potential offerors as to customary commercial practices relevant to the solicitation. (*See* AR 37-38.) In response to the SSQ, the BOP received suggestions about its proposed pricing benchmark of CBSA 21; ACH suggested that the BOP use a combination of CBSAs or a CBSA outside of Maryland due to Maryland's distinctive price-setting structure. (AR 48.) Based on this market research, the BOP determined that choosing a different CBSA in place of CBSA 21 was consistent with customary commercial practice. (*See* AR 66.) As ACH itself proposed using a pricing benchmark other than CBSA 21, and the BOP's decision to reject CBSA 21 and choose another CBSA as the pricing benchmark was explained by the agency and informed by the market research, it was not contrary to law.

As to the BOP's second decision, ACH contends that requiring offerors to use CBSA 51 as the pricing benchmark presents offerors with unnecessary risk and is inadequately explained or supported by the record. As justification for choosing to use West Virginia pricing as the benchmark, the BOP explained that FCI Cumberland's location in the Maryland panhandle, directly across the Potomac River from West Virginia, allows the use of medical providers and services in West Virginia.

Agencies have broad discretion to make decisions regarding the scope of an evaluation factor, including aspects like benchmarks that will help the agency evaluate and choose among competing offers. *Sterling Medical Assocs., Inc. v. United States*, 177 Fed. Cl. 550, 560 (2025) (citing *Forestry Survs. & Data v. United States*, 44 Fed. Cl. 493, 499 (1999)); *SH Synergy, LLC v. United States*, 165 Fed. Cl. 745, 781 (2023). This discretion is not, however, unlimited. Agencies must still consider relevant factors and explain their decision. *See Advanced Data Concepts, Inc. v. United States*, 216 F.3d at 1058. An agency's unexplained decision is arbitrary. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983) ("the agency must examine the relevant data and articulate a satisfactory explanation for its action . . . . Normally, an agency rule would be arbitrary and capricious if the agency has . . . entirely failed to consider an important aspect of the problem."); *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369-1370 (Fed. Cir. 1998) ("An explicit explanation is not necessary, however, where the agency's decisional path is reasonably discernible."); *cf. Weeks Marine,* 575 F.3d at 1370 (upholding an agency's decision when the agency "stat[ed] the reasons for its procurement decision and the thinking behind those reasons").

The BOP's stated rationale for its decision to use CSBA 51 as the pricing benchmark is "to maintain consistency with the [BOP's Comprehensive Medical Contracting Section] pricing

methodology." (AR 66.) This rationale does not address or explain why the BOP selected CBSA 51, as opposed to another CBSA, as the benchmark. The record shows that despite the plaintiff's response to the SSQ, no rural West Virginia hospitals were used to fulfill the contract. (*Compare* AR 48 *with* AR 68.) Ninety-two percent of hospital visits under the incumbent contract were to Maryland hospitals, while seven percent were to Pennsylvania hospitals. (AR 68.) The one percent of hospital visits that occurred in West Virginia was through the West Virginia University hospital network, which is not within CBSA 51. (*Id.*) The BOP did not identify any rationale for choosing CBSA 51, and nothing in the record otherwise supports or explains this decision. Not only is the BOP's decision unexplained, but its path to selecting CBSA 51 cannot "reasonably be discerned." *Bowman Transp., Inc.* 419 U.S. at 286. As the BOP's election to use CBSA 51 as the pricing benchmark is neither explained nor tied to or supported by facts in the record, it is arbitrary and capricious.

Once a protester successfully shows that an agency's decision is arbitrary and capricious, the court "must turn to the merits of the party's claim and determine whether it can prove it was prejudiced based on the record evidence." *Am. Relocation Connections,* 789 F. App'x at 226. To prevail, ACH must show that it suffered a "non-trivial competitive injury" from the BOP's choice of CBSA 51 as the benchmark. *Weeks Marine*, 575 F.3d at 1361-62.

ACH argues that it was prejudiced by the BOP's decision to use CBSA 51 as the pricing benchmark by tying the pricing benchmark to a locality that offerors will not use to treat inmates. Thus, the BOP "deprived ACH of any reasonable basis on which to formulate its proposed pricing." (ECF 17 at 27.) ACH also argues that the potential price discrepancy between a non-Maryland benchmark and the prices in Maryland, where most of the services under the contract will be fulfilled, will lead to unnecessary financial risk. (*Id.* at 28.)

ACH has shown that the BOP's choice to use CBSA 51 is arbitrary, but to prevail it must also show that the prejudice it alleges is caused by that choice. The problem for ACH is that its injury is tied to the BOP's decision not to use CBSA 21 as the pricing benchmark, and that decision is explained and supported by the record and is, therefore, not arbitrary and capricious. ACH argues that it is injured because it cannot reasonably price the contract using any benchmark other than CBSA 21, and that the use of any other basis for pricing is not reasonable. ACH's alleged injuries are tied to this decision and are the same, regardless of which other pricing benchmark the BOP elects to use. The same is true for ACH's argument that potential price fluctuations using the West Virginia rates make it too risky to calculate pricing when it will be paying hospitals in Maryland to provide service under the contract. That alleged injury also depends on rejecting CBSA 21 as the pricing benchmark. No injury or prejudice is allegedly tied to the decision to use West Virginia rates, as opposed to Pennsylvania rates or some hybrid rates; the use of any CBSA other than CBSA 21 would present the same issue for ACH due to Maryland's different pricing structure.

ACH has thus showed no prejudice arising from the BOP's unexplained choice to use CBSA 51 as the pricing benchmark. All the harms ACH alleges are tied to the decision not to use CBSA 21, not the BOP's choice to use CBSA 51. The injury alleged is tied to a reasonable decision by the agency and therefore cannot form the basis for relief.

## VI. CONCLUSION

The BOP's use of CBSA 51 as the pricing benchmark for the FCI Cumberland medical care solicitation is not supported by the record and is arbitrary and capricious. ACH, however, has failed to show it was injured by this decision. Its injury arises from the BOP's decision not to use CBSA 21 rates as the pricing benchmark. That decision is supported by the record and explained by the agency; it is not arbitrary and capricious or contrary to law. Thus, no injury arises from the BOP's arbitrary and capricious decision, so ACH is not entitled to relief.

ACH's motion for judgment on the administrative record is denied, and the defendant's motion for judgment on the administrative record is granted.

s/ Richard A. Hertling

**Richard A. Hertling**
**Judge**